# Court of Appeals.

## SOUTH-CAROLINA, SPRING CIRCUIT, 1811.

*The State*
v.                } LIBEL.
*Thomas Lehre.*

[The following *unanimous opinion* of the Court of Appeals, on the doctrine of Libel, was delivered on the 21st of January, 1811. At a special meeting of the gentlemen of the Charleston Bar, held on the same day, it was *Resolved*, That the Attorney General should be requested to apply to Judge WATIES, for a copy of the Opinion, with leave to publish it, as containing a truly legal and constitutional view of the doctrine it embraces. To this request the Judge acceded, and we are thus enabled to submit to the public consideration a sound and eloquent decision, on a subject of the highest public and private importance.]

WATIES, J. My brethren have assigned to me the duty of giving the opinion of the Court in this case.

If it required a minute examination of the facts or principles, I should be unable, in my present state of health, to perform that duty ; but the case does not require this ; and the very full and able discussion of it, by the counsel on both sides, has rendered the task of deciding on it still more easy.

The only question which requires any examination, is, whether the defendant had a right to justify the libel with which he was charged, by giving the truth of it in evidence ?

It is not, indeed, absolutely necessary that I should consider even this question. It would be sufficient to say, for it is the opinion of all the judges, that the right which is claimed by the defendant has been exercised by him in the fullest extent ; that all the facts which are thought material to his defence were allowed by the prosecutor to be given in evidence ; that notwithstanding these, the jury have found his publication a libel ; and that, therefore, there is no ground for the interference of this Court.

But as it is of importance that the rule of evidence which has been made a question, should not be left subject to doubt in any future case, it is thought proper that I should also declare the opinion of the judges upon the law, in this respect.

It has been insisted on, for the defendant, that in a criminal proceeding, as well as in a civil action, a party charged with a libel may give the truth of it in evidence. His counsel have contended that this was the general rule of the common law, which may be inferred from the statutes of Westminster, 2 Rich. 2. and 1 &

*Margin:* SOUTH CAROLINA, 1811.

The State
v.
Lehre.

2 Phil. and Mary, all of which provide for the punishment of *false* tales only, and that therefore the publication of " *true* tales," however scandalous and malicious, was not then punishable.   This, I believe to be a correct construction of these statutes, as to all offences which come within them ; but it does not follow from this, that they were declaratory of the only offences at common law of the same nature, and that they recognize a common law right, to justify a libel by giving the truth in evidence.   The contrary may, I think, be fairly presumed ; for, although on the trial of some offences under these statutes, the judges have said that the same were before punishable at common law, yet they do not say that it was not also a common law offence, to publish even " *true* tales," for a malicious purpose.   These statutes, it appears, have prescribed new and more grievous punishments ; it is most probable, therefore, that they only intended to punish, in a greater degree, the publication of tales which were aggravated by falsehood, and to leave the lesser offence to the common law remedy.   This presumption is strengthened by the consideration, that all these statutes were made for special purposes.   The first (statute of Westminster) was made to suppress sedition.   The stat. of Rich. 2. was made to protect the great officers of the government ; and the last (1 and 2 P. and M.) was also made to suppress sedition.

But it is not necessary to explore the dark recesses of the ancient law to ascertain this point.   It has been ascertained for us by those more eminently qualified than we are, for this great labour ; by those who are our best guides in all our legal researches, and to whose steady and unerring light we may more safely trust, than to

any new lights of the present day. All the great ex-
pounders of the law, from Lord Coke down to Mr. Jus-
tice Blackstone, have uniformly laid it down as a rule
of the common law, that the truth of a libel cannot be
given in evidence in a criminal proceeding; and this
rule has never been departed from in a single instance.
It is true, that a difference of opinion did, for some time,
exist among the English judges, on the law respecting
libels; but this was only the question, whether the
court or the jury should decide on the criminal intent
of the publication. The dispute was at last settled by
the stat. of 31 Geo. III. commonly called Mr. Fox's
Act; and we think, correctly settled : for, we are all of
opinion, that the statute was only declaratory of the old
law. A jury has the unquestionable right to decide on
the criminality of a libel, as far as the libel itself is the
evidence of it. For this purpose, a defendant may read
and rely on any part of it, to show an innocent motive
and purpose in the publication; and this right was al-
lowed to the defendant in the present case, in its fullest
latitude.

But the law at no time, and under no construction,
has ever authorized a defendant, in a criminal proceed-
ing, to justify a libel by giving the truth of it in evi
dence. This has been invariably refused. It has been
asserted, that the *first* case in which this was solemnly
ruled, was decided in the Star Chamber; but as no case
can be found prior to that, in which it was otherwise
ruled, it is reasonable to conclude, that this was not the
creation of a new rule, but the observance only of an
old one. And, even if it *did* originate in this odious and
tyrannical court, yet it does not follow that the rule it-
self is also odious and tyrannical.

The adherence to it by the common law courts, ever since, proves the contrary : they have given legitimacy to it as a common law rule ; and its authority is farther, sanctioned by the justice and morality of its object. How many other rules are there of modern origin, and of less importance to the quiet and happiness of society,, which are acknowledged to form a part of the common law, and from which we are not at liberty to depart ?

It is a great error to look to the first sources of the common law for the purity of its principles. The best and purest of these are of later accession. The sources of the common law, (except such parts as were derived from the laws of Rome) were shallow and muddy. In its downward course, it has been continually filtered and enlarged, by passing through courts of increased wisdom and science ; and it is owing to these continued filterings and accessions, that we see it as it now is, a clear, wholesome, deep, and majestic stream. The most ancient decisions rest chiefly upon feudal principles, or upon reasons altogether barbarous and preposterous ; these have been gradually disregarded ; and we see more modern adjudications supported by such solid and rational grounds, that we may now say of the common law, with a very few exceptions, that nothing is law which is not reason.

But there is good cause to believe, that this rule did not originate in the Star Chamber, and was not the creature of that court. The rule was not peculiar to England : it existed long before. It made a part of the Roman law. We read in the Pandects of Justinian, that " a defamer is not to be exempt from the punishment

due to the injury, although the libel contain *nothing but what is true.* It is not permitted to make proof of facts, which are *secret,* and which have been the foundation of the libel." The same rule was adopted by a special edict of France, in 1561 ; and it is also to be found in the Constitution of the Emperor Charles V. in these words : " Though the defamation were grounded on *truth,* yet the defamer ought to be punished according to the power of the judge." (See Inst. Justin. lib. 4. tit. 4. 2 Domat. B. 3. tit. 12. and also, Bayle's Dissertation on defamatory libels.)

It is most probable then, that this rule was derived from the civil law. We know, that for many centuries, this was the law of all Europe; and England was governed by it for nearly 400 years. Although the barbarians who successively invaded and possessed that country, introduced into it many of their own laws and customs, yet the maxims and principles of the Roman law were too deeply founded in reason and justice to have been ever disused; and there is no doubt that they compose now a large part of the common law of England. The celebrated Sir William Jones has said, "the Pandects of Justinian are a most valuable mine of judicial knowledge. They give law at this hour to the greatest part of Europe ; and, though few English lawyers dare make such an acknowledgment, the civil law is the true source of nearly all our English laws, that are not founded on a feudal origin." (Letter to the governor general of India, in 1778.)

I hope that the authority of this enlightened and profound searcher into antiquity will satisfy the objection which was made to this rule, if it should happen to be of Roman origin. But this is not only the law of Eng-

land, and probably of all Europe ; it is the law also of most of the free States of America. It is the law of New-York, (as appears in the trial of Croswell) even in the exceptionable degree which Mr. Fox's Act was made to correct. It *was* the law of Pennsylvania ; because the constitution of that state makes an *exception* to it in libels against public officers. And it must have been the law of Connecticut, previously to the act of her legislature in 1804, or that act would not have been made.*

I have so far considered the case on the ground of authority ; and it would be sufficient for us to decide it on that ground only ; for we are bound to declare the law, and to give it operation, whether it be founded on good or bad reasons. But, as there does not exist in the whole system of our laws, a rule better supported by reason than the one under consideration, and as the counsel for the defendant have contended that those are not applicable to the state of our society, it is proper that I should take some notice of the objections made on this ground. I think indeed that the multiplied instances of the general adoption of the rule in every state of society, and under every form of government, afford sufficient proof of its being a rule both of general policy and morality. But as this rule is more fully evinced by the reasons assigned for it by the commentators on our laws, I will proceed to examine these. In 5. Rep. 12. Lord Coke says, " a libel may be either against a private man or against a magistrate. If it be made against a private man, it deserves a severe punishment ; for although a libel be against one, yet it ex-

---

* Not the law in Maryland.

cites all those of the same family, kindred or society to *revenge*, and so *tends to quarrels and breaches of the peace*, and may be the cause of the shedding of blood." He then proceeds to say, "it is not material whether the libel be *true*, or whether the party libelled be of good or ill fame; for in a settled government, a party grieved ought to complain for an injury done him *in the ordinary course of law*, and ought by no means to *revenge himself* either by libelling or otherwise." The same reasons for not allowing the truth of a libel to be given in evidence are laid down in numerous other authorities; but I shall only refer farther to Mr. Just. Blackstone. In his fourth book, 150. he thus states the law : "It is *immaterial* with respect to the *essence* of a libel, whether the matter of it be *true* or false, since the provocation and *not the falsity*, is the thing to be punished criminally ; though doubtless the falsehood of it may aggravate its guilt and enhance the punishment." "In a civil suit, a libel must appear to be false as well as scandalous, for if the charge be true, the party has received no injury, and has no ground to demand a compensation for *himself*, whatever offence it may be against *the public*. But in a criminal prosecution, the tendency which all libels have to *create animosities* and to disturb the *public peace* is the *sole consideration of the law*."

Here, then, we see it distinctly laid down, that although the falsehood of a libel will aggravate the offence, yet the offence is complete without it ; but a libel is an offence, not because it is false, but because it tends to *provoke* quarrels and private revenge, which is an usurpation of the public authority ; that the objects therefore of punishing a libel are to preserve the public peace, and to enforce a due submission to the laws.

The State<br>v.<br>Lehre.

Can it be seriously contended, that these objects are no applicable to our state of society? It appears to me that every reflecting mind must allow that they are *peculiarly* necessary to a free government. The preservation of the public peace, and the prevention of private vengeance in any form, are the very foundation of civil liberty, which could not be said to be fully enjoyed, unless these great ends were fully secured. It is for this reason that the sending a challenge is a high offence. This too is punishable, only because it is a *provocation* to a breach of the public peace. It is also a public offence, to seize by force one's own property, because it is not lawful for any man to redress his own wrongs. If, therefore, a man forcibly takes possession of his own land, he is punishable for a forcible entry. However manifest his right may be, yet he is not allowed to regain it by force, but must apply to the law for its aid and sanction. It would be in vain for him to urge the hardship of being punished for taking his own property. The law would reply, that he had done an act which affected the public peace : that it was his duty to refer his claim to an authorized tribunal, and to seek redress from the law. This reply may be fairly made to the reasoning of the counsel for the defendant in the present case. It was zealously contended that the publication of truth could not be a crime. But the truth makes no part of the essence of a libel ; though the defendant had proved his charges against the prosecutor, yet this proof could not have availed him; he would, notwithstanding, be guilty of having *provoked* a breach of the public peace, and of having usurped the public right by redressing his grievance in his own way, and inflicting punishment by his own measure.

These reasons for not allowing the truth of a libel to be given in evidence in a criminal proceeding, are fully sufficient to justify the rule. But there is another reason for it, which will be thought by many to give more value to it than any other. It serves to protect from public exposure secret infirmities of mind and body, and even crimes which have been repented of and forgiven. Who will say that the truth of these should be given in evidence to satisfy or excuse the exposure of them ? A man may have been overcome by some strong temptation, and been induced to commit a crime which he has since abhorred ; by a long perseverance in virtue and honesty, he made his peace with all who could be injured by it ; and has thus a well grounded hope of obtaining pardon from his God. A woman, too, who may have yielded to some seducer, or even been the willing servant of vice, may have since become the faithful partner of some worthy man and the mother of a virtuous offspring, her frailties have long been forgiven, and she is in the enjoyment of the esteem and respect of all her neighbors. Will any one say that these expiated sins may be dragged from the privacy in which they have been sheltered ; that they may be presented to the view of an unfeeling world ; be punished afresh by disgrace and odium, in which innocent connexions must participate ; and that the author of all this misery may justify the act by showing the truth of the charges ? Shall he be allowed to disturb the sacred work of reformation, and rob the poor penitent of the blessed fruits of her repentance ? Justice, charity, and morality all forbid it : and thank God ! the law forbids it also.

There is one more ground in this case which requires some notice. It was contended that the publication of

SOUTH CA-
ROLINA,
.1811.

The State
v.
Lehre.

the defendant was the history of a judicial proceeding and therefore no libel.—There is no doubt that a true account of the proceedings of a court is no offence, unless it is intended to serve as a vehicle to convey slanderous charges, and to gratify a malicious purpose ; in which case it would be libellous, though true. But the publication of the defendant does not *profess* to be a report of a judicial proceeding. It expressly states, that the *design* is to expose the injustice of a decree of the court of equity, and the malpractice of the prosecutor, as a solicitor ; by imposing on the court and inducing a party to the suit, to swear to a falsehood.— Whether these charges were made with a malicious intent, or not, was a question for the jury, which their verdict has decided ; and there is no reason for ordering a new trial upon this ground.

Before I conclude, it is thought proper that I should state, that the delay which has occurred in the decision of this case, has not proceeded from any difference of opinion among the judges on the former argument, but from a desire that, in a case so interesting to the feelings and reputation of the parties, the subject should be fully considered before it was decided. The death of our late excellent brother, Mr. Justice WILDS, made it necessary that another argument should be had at this court, because Mr. Justice NOTT and myself were not present at the former one. The case has been now most amply discussed on both sides, and the opinion delivered is the unanimous opinion of the Bench, after the fullest consideration, and the most perfect conviction.